UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITIBANK, N.A.,<br><br>*Plaintiff*,<br><br>v.<br><br>BARDIN HILL LOAN MANAGEMENT LLC, INVESTCORP CREDIT MANAGEMENT US LLC, GREYWOLF LOAN MANAGEMENT LP, ZAIS GROUP LLC, ALLSTATE INVESTMENT MANAGEMENT COMPANY, MEDALIST PARTNERS CORPORATE FINANCE LLC, TALL TREE INVESTMENT MANAGEMENT LLC, NEW GENERATION ADVISORS LLC, AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS LP,<br><br>*Defendants*. | No. 20 Civ. _____ (___)<br><br><br>**COMPLAINT** |

Plaintiff Citibank, N. A. ("Citibank"), by and through its attorneys, respectfully submits this complaint against the Defendants identified in paragraphs 9-17 below.

**PRELIMINARY STATEMENT**

1. On August 11, 2020, an operational mistake caused Citibank to transfer approximately $900 million of its own money to parties that were not entitled to it. When Citibank discovered the mistake, it promptly asked the recipients to return its money. Many reasonably and promptly agreed. Defendants, however, have not.

2. Defendants have unreasonably and unlawfully attempted to capitalize on Citibank's unfortunate error and refused to return Citibank's money. In aggregate, according to the most recently available figures relating to the Defendants, $108,739,005.47 is at issue.

3. This is the third action Citibank has filed relating to the "August 11 Overpayment." On August 17, 2020 Citibank filed an action against Brigade Capital Management, LP ("Brigade").

On August 18, 2020 Citibank filed an action against HPS Investment Partners, LLC ("HPS") and Symphony Asset Management, LLC ("Symphony").  The complaint in the "Brigade Action" is attached as Exhibit A and its allegations are incorporated by reference.  The complaint in the "HPS/Symphony Action" is attached as Exhibit B and its allegations are incorporated by reference.

4.       Each of Brigade, HPS and Symphony are firms that received mistaken overpayments on August 11.  Each of them received overpayments of more than $100 million.  In this Action, Citibank sues similarly situated firms that received lesser amounts.

5.       In each of the Brigade Action and the HPS/Symphony Action, the Honorable Jesse Furman of the United States District Court for the Southern District of New York entered orders that restrain Brigade, HPS and Symphony from "removing, withdrawing, transferring, assigning, or otherwise disposing of" funds wired to them in error.  Judge Furman has also consolidated the Brigade Action and the HPS/Symphony Action under the first-filed docket number:  1:20-cv-06539 (JMF) (S.D.N.Y) (the "Consolidated Action").

6.        The issues here are substantively identical to those already being litigated in the Consolidated Action.  With the filing of this Complaint, Citibank will be moving to consolidate this case with the Consolidated Action and asking the Court to enter parallel Temporary Restraining Orders against the Defendants named in this Complaint.

7.       Given the overlap of issues, the events at issue are described in this pleading in more summary fashion than the complaints filed in the prior actions.  As noted, however, the issue and events are the same and all allegations made in the Brigade Action complaint (Ex. A) and the HPS/Symphony Action complaint (Ex. B) are repeated here and made applicable to the Defendants named in this action.

**PARTIES**

2

8.      Citibank is a bank organized under the National Bank Act with its main office located in South Dakota.

9.      Defendant Bardin Hill Loan Management LLC is a limited liability company organized under the laws of Delaware.  It received approximately $45,624,008.29 in the August 11 Overpayment.  As of today, none of those funds have not been returned to Citibank.

10.      Defendant Investcorp Credit Management US LLC is a limited liability company organized under the laws of Delaware.  It received approximately $18,869,861.05 in the August 11 Overpayment.  As of today, none of those funds have not been returned to Citibank.

11.      Defendant Greywolf Loan Management LP is a limited partnership organized under the laws of Delaware.  It received approximately $15,920,138.89 in the August 11 Overpayment. As of today, $11,107,638.89 of those funds have not been returned to Citibank.

12.      Defendant Zais Group LLC is a foreign limited liability company organized under the laws of Delaware.  It received approximately $15,600,780.52 in the August 11 Overpayment. As of today, $13,159,092.63 of those funds have not been returned to Citibank.

13.      Defendant Allstate Investment Management Company is a limited liability company organized under the laws of Delaware.  It received approximately $10,544,028.76 in the August 11 Overpayment.  As of today, none of those funds have not been returned to Citibank.

14.      Defendant Medalist Partners Corporate Finance LLC is a limited liability company organized under the laws of Delaware.  It received approximately $4,534,844.42 in the August 11 Overpayment.  As of today, $2,605,007.73 of those funds have not been returned to Citibank.

15.      Defendant Tall Tree Investment Management LLC is a limited liability company organized under the laws of Delaware.  It received approximately $3,850,000.00 in the August 11 Overpayment.  As of today, none of those funds have not been returned to Citibank.

3

16.     Defendant New Generation Advisors LLC is a limited liability company organized under the laws of Massachusetts.  It received approximately $2,735,788.12 in the August 11 Overpayment.  As of today, none of those funds have not been returned to Citibank.

17.     Defendant Highland Capital Management Fund Advisors, LP is a limited partnership organized under the laws of Delaware.  It received approximately $243,580.00 in the August 11 Overpayment.  As of today, none of those funds have not been returned to Citibank.

## JURISDICTION AND VENUE

18.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

19.     This Court has personal jurisdiction over defendants, all of which conduct substantial business in New York.

20.     Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated.

## FACTUAL ALLEGATIONS

**Revlon's 2016 Loan**

21.     In 2016, Revlon acquired Elizabeth Arden, Inc.  The deal was partially facilitated by a seven-year, $1.8-billion loan.  A "Credit Agreement," governs the loans.

22.     Citibank serves as the administrative agent and collateral agent for the loan.  One of Citibank's many duties is to collect payments from Revlon to remit to the lenders under the Credit Agreement. Another is to maintain a register listing the amount of each loan and payment (the "Official Register"). The Official Register acts as the definitive record of amounts owed and received. Under the Credit Agreement, the Official Register is deemed "presumptively correct absent demonstrable error," and any error "shall not in any manner affect the obligation of [Revlon]

4

to repay (with applicable interest) the Loans made to [Revlon] in accordance with the terms of th[e] Agreement." § 2.8(c)–(d). Fund Managers have previously, and misleadingly, referred to documents other than the Official Register as purporting to evidence amounts due (or paid) under the Credit Agreement. This is incorrect and the Official Record controls.

23.    Revlon is responsible for making periodic interest payments under the Credit Agreement. The agreement also permits Revlon to pay principal ahead of schedule but only if certain requirements are met. Under Section 2.11(a) of the agreement, any prepayment by Revlon of principal on Eurocurrency loans, like those at issue here, must be preceded by a detailed written notice three business days in advance.

**The August 11 Overpayment**

24.    On August 11, 2020, in its role as administrative agent, undertook to make a payment to lenders on the Revlon loan.

25.    Payments, such as those made on August 11 are accompanied by a standard form "Payment Notice." The notices sent to defendants on August 11 described the payments as ***Libor Rate Interim Interest Payment***. They further described the payment as being for "Interim Interest." The Payment Notices did not state that the payments were a discharge or pre-payment of Revlon's entire loan.

26.    The interest payment was processed by Citibank on August 11, 2020. Due to issues with the loan-processing system, the payment to each lender was on average more than 100 times the interest that was intended to be paid. All the Defendants received significant overpayments.

27.    The specific amounts overpaid to each Defendant are noted above in paragraphs 9-17.

28.    The mistaken nature of the payment was obvious from the outset and clear on the face of the relevant documents. The Payment Notices were accompanied by "Payment

Transaction" records that ***did not match***.  Typically, the "Credit Amount" listed in the Payment Transaction was more than 100 times larger than the "Total Amount" due in the Payment Notices. This makes no sense and is, on its face, evidence of error.

29.     These overpayments were made with Citibank's own money.  It is not the case that Citibank was transmitting Revlon's funds to the Term Lenders.  Revlon did not provide such funds. The mistakenly distributed money belonged entirely to Citibank.

**Defendants' Conversion of Citibank's Funds**

30.     Clearly, Citibank made a mistake. Citibank did not intend to transfer more money than stated in the Payment Notices, let alone with its own funds. That was obvious from the language of the notices. But beyond that, given the terms of the Credit Agreement, a prepayment could not have occurred under the circumstances here.  The balance of the loan is not due for another three years, and a prepayment of any amount is only permitted with "irrevocable written notice" from Revlon three business days in advance. § 2.11(a). No prepayment notice was issued, because no prepayment was made. Nor was there a payoff letter, which is market standard practice when payment of the full outstanding balance of a loan is intended. Furthermore, no principal payment was funded by Revlon. And Citibank never modified the Official Register to reflect a full or partial discharge of principal in connection with the overpayment.

31.     As creditors woke up to find thousands if not millions more than expected in their bank accounts, the overpayment was covered widely by news outlets around the world. The Wall Street Journal reported that "Citigroup Pays Revlon Lenders Nearly $900 Million by Mistake." Bloomberg and Reuters made similar reports. Revlon, for its part, publicly stated that "Revlon did not pay down the loan or any part of the loan." And all of the articles made clear that the payment was mistaken.

32.     On August 12 and August 13, 2020, Citibank sent notices asking for the funds to be returned, less the correct amount of interim interest reflected by the credit amount in the payment notices.

33.     All the Defendants received multiple notices stating that the overpayments had been made on August 11 "in error."   Despite these notices, as well as other individualized communications, none of the Defendants have returned all the money they received as a result of the August 11 Overpayment.

34.     Examples of the various notices sent to Defendants are attached as Exhibit C.

35.     Also on August 12, other lenders—including, upon information and belief, Defendants—took three actions that showed that they, like everyone else, understood that the payments made on August 11 had been made with incorrect amounts.

36.     First, they purported to serve Revlon with a notice of an Event of Default under the 2016 loan. There would have been no reason to serve a notice of an Event of Default if the loan had just been paid in full.

37.     Second, acting through UMB Bank, which claims to have been appointed successor administrative agent, they purported to accelerate the loan's principal. That acceleration notice was a clear admission that the lenders did not believe that the principal was repaid (or intended to be repaid) on August 11; if it had been, there would have been nothing to accelerate.

38.     Third, UMB Bank, again claiming to be the administrative agent, filed a 117-page complaint accusing Revlon of improperly amending the Credit Agreement to avoid paying the 2016 lenders. *See* Complaint, *UMB Bank v. Revlon*, No. 20-cv-06352, Dkt. 1 (S.D.N.Y. Aug. 12, 2020). The complaint reconfirmed that the lenders were under no illusion that the loan had been fully repaid on August 11. Further, it alleged that Revlon was unable to repay the loan, because it was "insolvent and facing a severe liquidity crisis."

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Unjust Enrichment**
**(All Defendants)**

39.     Citibank repeats, realleges, and incorporates by reference the foregoing allegations, as well as those in Exs. A & B, as though fully set forth in this paragraph.

40.     Defendants were enriched at the direct expense of Citibank, by mistakenly receiving millions of dollars of Citibank's money to which they were not entitled.

41.     Equity and good conscience militate against permitting defendants to retain the misappropriated funds.

**SECOND CAUSE OF ACTION**
**Conversion**
**(All Defendants)**

42.     Citibank repeats, realleges, and incorporates by reference the foregoing allegations, as well as those in Exs. A & B, as though fully set forth in this paragraph.

43.     Defendants have and are continuing to exercise unauthorized dominion over specifically identifiable assets of Citibank.  For each defendant Citibank can identify—precisely— the amount of money mistakenly transferred on August 11, 2020.

44.     Despite Citibank's demands that defendants return the assets in question, defendants have refused to do so.

**THIRD CAUSE OF ACTION**
**Money Had and Received**
**(All Defendans)**

45.     Citibank repeats, realleges, and incorporates by reference the foregoing allegations, as well as those in Exs. A & B, as though fully set forth in this paragraph.

46.     On August 11, 2020, Defendants mistakenly received funds belonging to Citibank, and to which Defendants had no claim.

47.     The specific amounts at issue are noted in Paragraphs 9-17 above.

48.     Defendants benefitted, and continue to benefit, from the receipt of Citibank's money.

49.     Under principles of equity and good conscience, Defendants should not be permitted to keep Citibank's money.

### FOURTH CAUSE OF ACTION
### Payment by Mistake
### (All Defendants)

50.     Citibank repeats, realleges, and incorporates by reference the foregoing allegations, as well as those in Exs. A & B, as though fully set forth in this paragraph.

51.     On August 11, 2020, Citibank mistakenly sent payments to Defendants.   The payments were intended to transfer the interim interest owed by Revlon.   Instead, Citibank transferred an amount more than 100 times greater than the interest owed by Revlon, with the excess coming from Citibank's own funds.

52.     Defendants derived a benefit as a result of the mistaken payments.

53.     Equity demands restitution by Defendants to Citibank.

### PRAYER FOR RELIEF

**WHEREFORE**, Citibank respectfully requests that this Court enter judgment in favor of Citibank and against Defendants:

a.  Ordering Defendants to immediately return the misappropriated funds or, in the alternative, freeze the overpayment received from Citibank and refrain from transferring or distributing those funds;

b.  Declaring that Citibank is rightfully entitled to the misappropriated funds;

c.  Ordering Defendants to return all misappropriated funds,

d.  Ordering Defendants to pay Citibank interest on the funds misappropriated for the duration that they remain with Defendants;

e.  Ordering Defendants to pay damages reflecting their misconduct to Citibank;

f.  Awarding reasonable costs and expenses incurred in this action, including attorneys' fees;

g.  Awarding pre-judgment interest on all such damages, monetary or otherwise; and

h.  Awarding further relief as the Court may deem just and proper.

Dated: August 20, 2020
      New York, New York

THE LAW OFFICES OF JOHN F. BAUGHMAN, PLLC

By: _____
     John F. Baughman
John F. Baughman
Nathaniel E. Marmon
299 Broadway, Suite 207
New York, New York 10007
(347) 241-6347

*Attorneys for Plaintiff Citibank, N.A.*